IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIA MLADINOV,

    Plaintiff,

  v.

LA QUINTA INNS, INC. and
LQ MANAGEMENT LLC.,

    Defendants.

No. 19-cv-03003
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maria Mladinov (Mladinov) brought suit against Defendants La Quinta Inns, Inc., and Lq Management L.L.C., (collectively, La Quinta), seeking damages for personal injuries that she sustained when she slipped and fell on the stairs at the La Quinta hotel in downtown Chicago. La Quinta now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the bases that Mladinov fails to set forth any evidence as to what actually caused her to fall, and that La Quinta did not have notice of the allegedly dangerous condition. R. 54, Mot. Summ. J.[1] La Quinta also moves to bar Mladinov's expert witness's affidavit and testimony. R. 65, Mot. Bar. For the reasons that follow, La Quinta's Motion to Bar Steven Elisco (Elisco) is granted, and La Quinta's Motion for Summary Judgment is also granted.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

**Background**

The following facts are set forth as favorably to Mladinov, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). This background section details all material undisputed facts and notes where facts are disputed. At summary judgment, the Court assumes the truth of the undisputed facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

On June 30, 2017, Mladinov was staying as a guest at La Quinta's hotel at 1 South Franklin, in Chicago, Illinois. R. 59, Pl.'s Resp. DSOF ¶ 5[2]; *see* R. 55-3, Mladinov Dep. at 94:17–95:10; R. 55-2, Ans. ¶ 2. On the morning of June 30, 2017, Mladinov visited the breakfast area of the hotel. Pl.'s Resp. DSOF ¶ 9. After breakfast, around 6:23 a.m., Mladinov took the stairs leading from the first floor to the second floor of the hotel. *Id.* ¶ 10. The stairs are made of a hard black substance. *See* Mladinov Dep. at 143:4–89; R. 55-7, Video Surveillance. The stairs connect the first floor to the second-floor restaurant. R. 55-5, Bailey Dep. at 8:12–19. While

---

[2]Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for Defendants' Statement of Facts (R. 55); "Pl.'s Resp. DSOF" for Plaintiff's Response to Defendants' Statement of Facts (R. 59 at 2–9); "PSOAF" for Plaintiff's Statement of Additional Facts (R. 59 at 10); and "Defs.' Resp. PSOAF" for Defendants' Response to Plaintiff's Statement of Additional Facts (R. 65).

The numbering of Plaintiff's Response to Defendants' Statement of Facts is off, as it includes two sets of numbers 8 and 9. For consistency, the Court uses the correct numbering from Defendants' Statement of Facts, even when referring to Plaintiff's Response to Defendants' Statement of Fact that is numbered differently in that document (e.g., if this Opinion cites to Pl.'s Resp. DSOF ¶ 13, it refers to the statement of fact numbered ¶ 13 in Defendants' Statement of Facts, but is numbered ¶ 11 in Plaintiff's Response to Defendant's Statement of Facts). Since both parties start the numbering of Plaintiff's Additional Facts at ¶ 43, this Opinion employs the same numbering used by both parties when citing to Plaintiff's Additional Facts and Defendants' Responses thereto.

walking down the stairs, Mladinov slipped and fell. Pl.'s Resp. DSOF ¶¶ 8, 13. As a result of the fall, Mladinov was rendered unconscious. *Id.* ¶¶ 14, 16–17, 19.

Kycia Burton (Burton), a La Quinta employee, helped Mladinov regain consciousness after the fall. Pl.'s Resp. DSOF ¶¶ 14, 16–17, 19, 25, 29–30, 32. Mladinov did not look to see if the stairs from which she fell were wet. *Id.* ¶ 16. Mladinov did not recall seeing anything wrong with the stairs before or after her fall, including the presence of a foreign substance on them. *Id.* ¶¶ 17–20. However, Mladinov testified that her pants, initially dry, were wet after the fall. *Id.* ¶¶ 14, 16–17, 19; PSOAF ¶¶ 43–44. La Quinta disputes that Mladinov's pants were wet after her fall, as Burton testified that she did not observe wetness on Mladinov. Defs.' Resp. PSOAF ¶¶ 43–44. Mladinov did not know where the alleged water came from, how long it had been there, nor what the condition of the alleged water may have been before her fall. Pl.'s Resp. DSOF ¶¶ 18–22. When approaching Mladinov after the fall, Burton did not see any water or other debris on the stairs, nor did she see any water after she assisted Mladinov after her fall. *Id.* ¶¶ 33–35.

After Burton helped Mladinov down the stairs, Tim Bailey (Bailey), a La Quinta employee, took photographs of the stairs where Mladinov fell. Pl.'s Resp. DSOF ¶ 38. Baily testified that he learned of Mladinov's fall "a few minutes" after it occurred, and upon learning of the fall, he "immediately took pictures of the area." DSOF ¶ 38 (citing Baily Dep. at 9:17–10:9). The parties agree that when Bailey took the photos of the stairs, there was no water or other liquid present on the stairs. Pl.'s Resp. DSOF ¶ 39.

2

Before Mladinov's fall, none of the other guests or staff informed either Burton or Bailey of any liquid or water on the stairs. Pl.'s Resp. DSOF ¶¶ 26, 40. The floors would not have been washed or waxed at any time just before Mladinov's fall. *Id.* ¶ 28. Baily testified that the stairs "usually" were cleaned around 10:00 a.m. every morning. Defs.' Resp. PSOAF ¶ 46. If there was water or other liquid on the stairs, Burton did not know how long it would have been there. Pl.'s Resp. DSOF ¶ 27. Video footage of the fall does not show any liquids or water on the stairs, but Mladinov contends that the video footage is "grainy" and would not show any discernable "texture" of a liquid or water on the stairs even if it was present. *Id.* ¶ 44; Video Surveillance.

Mladinov filed a complaint against LaQuinta seeking damages for personal injuries that she allegedly sustained during her fall and asserting that La Quinta was negligent for allowing a dangerous condition to exist, failing to warn of the condition, failing to repair the condition, and otherwise failing to maintain the premises. R. 55-1, Compl. La Quinta now moves for summary judgment on the basis that Mladinov fails to set forth any evidence or factual basis as to what actually caused her to fall, and that it did not have notice of the issue.

**Standard of Review**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled

to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

## Analysis

Mladinov seeks to recover damages under a common law negligence cause of action for the injuries she sustained from a slip and fall as an invitee on the La Quinta's premises. Compl.

Under Illinois law, in order to adequately state a claim for negligence, a plaintiff must allege: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach."[3] *Coole v. Cent.*

---

[3] When the Court's jurisdiction over a case is based on diversity of citizenship—as it is here—the Court applies the substantive law of the state in which it sits to determine the elements a plaintiff must prove. *Lane v. Hardee's Food Sys., Inc.*, 184 F.3d 705, 707 (7th Cir. 1999).

4

*Area Recycling*, 893 N.E.2d 303, 309 (Ill. App. Ct. 2008) (citing *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006)). A business owner owes its invitee "a duty to exercise ordinary care in maintaining its premises in a reasonably safe condition." *Pavlik v. Wal-Mart Stores, Inc.,* 753 N.E. 1007, 1010 (Ill. App. Ct. 2001). "A business owner breaches its duty to an invitee who slips on a foreign substance if '(1) the substance was placed there by the negligence of the proprietor or (2) [its] servant knew of its presence, or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e. the proprietor had constructive notice of the substance." *Id.* (quoting *Hayes v. Bailey*, 400 N.E.2d 544, 546 (Ill. 1980)).

La Quinta advances two bases for summary judgment. First, La Quinta argues that Mladinov cannot identify the cause of her fall, and thus there is no evidence that La Quinta proximately caused her fall. Mot. Summ. J. at 3–6. Second, even if a dangerous condition existed before Mladinov's fall, La Quinta argues that it cannot be held liable as it did not have actual or constructive notice of the condition prior to her fall. *Id.* 6–8.

In response, Mladinov argues that the evidence establishes that she fell on a foreign substance on the stairs. R. 59, Resp. at 12. She also contends that La Quinta breached its duty of care to her by failing to maintain a "safe and hazard free staircase." *Id.* Mladinov relies in part on an affidavit and testimony from her architect expert witness, Elisco, to support her argument that La Quinta was on notice that there was a probability that a liquid would be spilled and left on the stairs—and failed

5

to mitigate that risk—because (1) the restaurant at the top of the stairs allowed guests to take food and beverages out of the restaurant, and (2) La Quinta's policies for maintaining a hazard-free staircase were not sufficient according to standards promulgated by the National Floor Safety Institute. *Id.* at 14–16. La Quinta moves to bar Elisco's expert affidavit and testimony. Mot. Bar.

## I. Motion to Bar Steven Elisco

Because Mladinov's argument against summary judgment on the issue of breach of duty relies in part on Elisco's affidavit and testimony, the Court first decides La Quinta's Motion to Bar. Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) govern the admissibility of expert testimony in federal court. *See Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 672 (7th Cir. 2017). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

Under *Daubert*, the Court functions as a "gatekeeper" to "ensure the reliability and relevancy of expert testimony." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607

6

(7th Cir. 2006) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). To do so, the Court "must make a preliminary assessment that the testimony's underlying reasoning or methodology is scientifically valid and properly applied to the facts at issue." *Krik*, 870 F.3d at 674 (citing *Daubert*, 509 U.S. at 592–93). District courts have "broad discretion" in their role as gatekeepers when determining the relevance and reliability of expert opinion testimony. *Id.* (citing *Kumho Tire*, 526 U.S. at 141).

As noted above, Mladinov relies primarily on Elisco's opinion that "the presence of the café near the stairs is a risk that should have been identified if a proper hazard inspection was performed." R. 69, Pl.'s Resp. Mot. Bar at 5; *see also* Resp. at 14–16. La Quinta offers a host of reasons why Elisco's opinions should be barred under Rule 702. *See* Mot. Bar at 4–15.

La Quinta does not take issue with—nor does the Court—Elisco's qualifications as an architect, including his expertise in building code analysis. Mot. Bar at 5. But, as La Quinta points out, Elisco admits not only that the stairs were built to code, but also that the placement of a café thirteen feet from a staircase is not contrary to any safety standard or building code. *Id.* at 5, 9 (citing R. 66-2, Elisco Dep. at 37:2–13, 49:24–50:20). Still, Elisco takes issue with the safety of the stairs, stating that "it does not appear that LaQuinta has . . . a Floor Safety Assurance Plan," and if La Quinta had such a Plan, it would have identified the "proximity of the Second Floor Café as a possible hazard" and "mitigated the risk." R. 59-1, Elisco Aff. ¶¶ 10, 14–16. But La Quinta in fact *does* have such a Plan covering hazard identification.

7

When showed the Plan during his deposition, Elisco admitted, "looks like a combination between maintenance and hazard identification." Mot. Bar at 10 (citing R. 66-4, Job Safety Program Manual; Elisco Dep. at 58:1–59:16). La Quinta also has a floor maintenance plan. *Id.* (citing R. 66-5, Floor Maintenance Standard Operating Procedure). Elisco did not review La Quinta's policies before writing his expert report or before his deposition. *See* Elisco Dep. at 28:6–9. The Court agrees with La Quinta that it is troubling that Elisco did not review La Quinta's policies covering hazard identification and floor maintenance before offering an expert opinion that La Quinta did not have such plans. Such a failure raises questions about whether Elisco's opinions are based upon "sufficient facts" to be considered a reliable opinion under Rule 702. What's more, Elisco's opinion that a café near the top of a staircase creates an increased risk of food and beverage spillage at the stairs amounts to common sense and is not a subject beyond the ken of the average juror.

But the Court need not definitively determine whether Elisco's affidavit contains "scientific knowledge" as required by Rule 702 because, as discussed in greater depth below, Mladinov presents no evidence linking her fall to La Quinta's alleged negligence because she is not sure that she slipped on a spilled liquid. *See infra* Section II.A; *see Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 293 (7th Cir. 1996) (excluding expert testimony about the likelihood of the creation of a hazard where plaintiffs failed to present evidence of causation linking the alleged hazard to plaintiff's fall). Elisco's opinion about what La Quinta should have known about the risk of the proximity of the café to the stairs cannot establish notice where Mladinov

8

has not presented evidence that an alleged substance that caused her fall was present on the stairs for any amount of time. *See* Mot. Bar at 9–10 (citing *Hresil v. Sears, Roebuck & Co.*, 403 N.E.2d 678, 680 (Ill. App. Ct. 1980); *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 651 (7th Cir. 2014); *Barr v. Frausto*, 65 N.E.3d 915 ¶ 22 (Ill. App. Ct. 2016) (all discussing the need for the plaintiff to present evidence of a hazard being present for a sufficient duration to establish constructive notice)); *see also Buckner*, 75 F.3d at 293. Like the expert evidence barred in *Buckner*, here, Elisco's testimony would not "assist the trier of fact to understand or determine [a fact in] issue." *Buckner*, 75 F.3d at 294. Therefore, the Court grants La Quinta's motion to bar Elisco's expert affidavit and testimony.

## II. Motion for Summary Judgment

Having determined that the Court will not consider Elisco's affidavit or deposition testimony, the Court turns to the substantive consideration of La Quinta's Motion for Summary Judgment.

### A. Proximate Cause

Its first basis for summary judgment, La Quinta argues that there is no evidence that any alleged foreign substance on the stairs caused Mladinov's fall, and therefore her negligence claim fails on the proximate cause element. Mot. Summ. J. at 3.

The Illinois Appellate Court found that proximate cause "can only be established when there is a reasonable certainty that defendant's acts caused the injury." *Kimbrough v. Jewel Companies, Inc.*, 416 N.E.2d 328, 331 (Ill. App. Ct. 1981).

9

La Quinta argues that the record is devoid of any factual basis to support that Mladinov's fall was proximately caused by a dangerous condition on La Quinta's premises. As such, La Quinta argues that her negligence claim must fail. Mot. Summ. J. at 8. La Quinta relies heavily on *Kimbrough* in support of that proposition. The Court agrees with La Quinta that *Kimbrough* is dispositive of the issue.

In *Kimbrough*, the plaintiff allegedly slipped and fell on grease spots on an exit ramp outside the defendant grocery store. 416 N.E.2d at 331. Although the plaintiff claimed to have seen the grease spots after her fall, she admitted that she had no idea why she fell. *Id.* The appellate court affirmed summary judgment for the defendant, concluding that plaintiff could not prove that a hazardous condition on the defendant's premises proximately caused her injury, as is required to defeat a summary judgment motion. *Id.* at 332 ("[I]t is not enough for a plaintiff to show that he or she fell on the defendant's flooring[;] the plaintiff must go further and prove that some condition caused the fall and that this condition was caused by the defendant.").

In response, Mladinov argues that *Kimbrough* is distinguishable from this case, and that La Quinta "mischaracterizes" her testimony. Resp. at 12–13. Specifically, Mladinov argues that the plaintiff in *Kimbrough* "was completely unable to identify the cause of her injuries beyond mere speculation," whereas in the instant case, "Mladinov has testified both that she was uncertain of the exact cause of her slipping but is certain that it was on a foreign substance on the stairs as her pants

were wet from a foreign substance when she awoke on the stairs after falling." *Id.* at 13–14.

A comparison of the plaintiff's testimony in *Kimbrough* and Mladinov's testimony in this case demonstrates the striking similarities between each plaintiff's uncertainty as to what caused their respective falls.

| **Plaintiff's testimony in *Kimbrough*** | **Mladinov's testimony** |
|---|---|
| Q. Do you know what you fell on? By that I mean was there anything specific that your right foot covered that made you fall?<br><br>A. No, I don't remember. | Q. And do you know what caused you to fall?<br><br>A. No.<br><br>(Mladinov Dep. at 100:15–16). |
| Q. Did you feel as though your foot caught on something, or something rolled underneath it? . . .<br><br>A. It happened so fast. I don't remember. | Q. [D]id you remember seeing any issues with the staircase itself, or anything like that?<br><br>A. I don't remember, honest. I don't even remember falling. If she didn't wake me up, I wouldn't have known I fell.<br><br>(Mladinov Dep. at 117:10–18). |
| Q. Do you have any idea, to this date, what you might have fallen on?<br><br>A. No I don't. | Q. And again, you don't know actually, specifically, what caused you to fall, or anything like that?<br><br>A. Correct.<br><br>(Mladinov Dep. at 117:19–22). |
| Q. After you fell, did you look and see what you might have fallen on?<br><br>A. No I didn't.<br><br>*Kimbrough*, 416 N.E.2d at 330–31. | Q. [Y]ou didn't look to see any water, or anything like that, on the actual stairs?<br><br>A. No.<br><br>(Mladinov Dep. at 103:4–7). |

In this case, as in *Kimbrough*, Mladinov did not know what specifically caused her fall, nor did she see any issues with the stairs that could have caused her fall. Despite Mladinov's insistence that she was "certain" that she fell on a foreign substance because of the wetness on her pants, the evidence does not support that argument. *See* Mladinov Dep. at 102:15–20 ("Q. You mentioned that after the fall you felt some wetness? A. My pants [were] wet on the left side. Q. Okay. Do you know what that wetness was – where it came from? A. I think the steps."); *id.* at 111:20–112:1 ("Q. . . . And you don't know where that water [on your pants] came from? . . . A: Correct. I fell down the flight of stairs, I don't know what happened until that lady woke me up."). Construing the evidence in the light most favorable to Mladinov—as it must—the Court finds that the evidence establishes that there was liquid on the stairs during her fall, but, critically, not that the liquid was on the *stair* on which Mladinov stepped and slipped. *See Kimbrough*, 416 N.E.2d at 331 (the plaintiff "admitted that while she saw something that looked like grease in the area, she did not know whether it was grease, what kind it was, whether it was slippery, and most importantly, whether she had stepped on it").

Mladinov attempts to rely on two recent Illinois Appellate Court cases to distinguish *Kimbrough*, but neither saves her case. Mladinov contends *Kimbrough* has been distinguished by *Parker v. CBM Design, Inc.*, 2014 WL 2493193, *10 (Ill App. Ct. May 29, 2014) because the court held that summary judgment for defendant was improper where the plaintiff had no "doubt in [her] mind that anything other than the surface of the floor caused her to slip" despite also testifying that she was

12

not sure what caused her to fall. First, the Court agrees with La Quinta that unpublished Illinois Appellate Court decisions issued before January 1, 2021 can only be relied on for limited purposes, none of which are present here. Reply at 3 (citing *Kai v. Bd. of Directors of Spring Hill Bldg. 1 Condo. Ass'n, Inc.*, 2020 WL 2904046, at *5 (Ill. App. Ct. June 3, 2020) (citing Ill. R. S. Ct. 23(e))). But even if this Court could rely on *Parker*, a closer reading indicates that it does not support Mladinov's position. The plaintiff in Parker argued that her fall was caused by the defendant's negligent resurfacing of the freezer floor, which caused her to slip and fall. *Parker*, 2014 WL 2493193, *1. The court held that, unlike *Kimbrough*, in which "[t]he lack of an identifiable cause was the determinative factor," in *Parker*, "the plaintiff specifically pointed to a defect which she claimed had caused her to fall, namely the resurfaced bakery freezer floor" and therefore summary judgment could not be granted for the defendant. As discussed above, Mladinov provides no evidence pointing to a specific defect on the stairs that caused her to fall; rather, she relies on the circumstantial evidence of the wetness on her pants.

Mladinov relies on *Heider* in support of her argument that a plaintiff need not present "actual evidence . . . but that 'circumstantial evidence' [is] enough to defeat summary judgement when that circumstantial evidence could lead to the probable inference that there was negligence." Resp. at 14 (citing *Heider v. DJG Pizza, Inc.*, 138 N.E.3d 934, 941 (Ill. App. Ct. 2019)). Although that is an accurate proposition of law, the Court agrees with La Quinta that it does not apply to the facts at hand. In *Heider*, the court held that circumstantial evidence created a question of fact as to

how long the dangerous condition existed, but held that "the undisputed evidence establishe[d] [Mr.] Heider slipped on a small, unidentified foreign substance." *Heider*, 138 N.E.3d at 939, 941. So, as to proximate cause, the court held that the facts were distinguishable from those in *Kimbrough* where the plaintiff could not identify the cause of her injury. *Id.* at 939. As discussed above, like in *Kimbrough*, here, Mladinov cannot identify what caused her to slip and fall. The evidence that her pants were wet after her fall is insufficient to create the "probable, not merely possible" conclusion that Mladinov's fall was caused by water or another liquid. *See id.* at 941; *see also Brett v. F. W. Woolworth Co.*, 290 N.E.2d 712, 714 (Ill. App. Ct. 1972) (granting summary judgment to defendant on question of proximate cause because evidence that plaintiff landed near a depression underneath rug after a fall was "too ambiguous an inference upon which to predicate a causal connection" where plaintiff admitted she did not see or feel what caused her fall).

The Court agrees with La Quinta that the instant facts align with those in *Kimbrough*, and therefore Mladinov's uncertainty about whether she slipped on a substance precludes liability. Mladinov has failed to establish either the presence of a dangerous condition on the stairs, or that any such hazard proximately caused her injury.

While the Court could end its analysis at this juncture, for the sake of completeness, the Court addresses La Quinta's contention that it is entitled to summary judgment on the issue of a breach of duty via a lack of actual or constructive notice.

14

## B. Actual or Constructive Notice

In Illinois, a premises owner is only liable for a customer's injuries where there is evidence that the premises owner knew or should have known that a condition existed on the premises. *See Hayes*, 400 N.E. 2d at 546. Constructive notice in Illinois can be established by evidence of (1) a dangerous condition that existed for *sufficient time* that it should have been discovered by the exercise of ordinary care or (2) a "dangerous condition was part of a pattern of conduct or a recurring incident." *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988) (internal citations omitted) (emphasis added).

La Quinta argues that "even assuming that some condition/water was on the staircase (and that this was the cause of [Mladinov's] fall) [La Quinta is] nonetheless entitled to summary judgment because Mladinov cannot show that [La Quinta] had actual or constructive notice of the condition at issue." Mot. Summ. J. at 6. Mladinov does not argue that La Quinta had actual knowledge of the presence of a foreign substance on the stairs. *See* Resp. at 14–16. As such, the Court limits its analysis to the issue of constructive notice.

La Quinta insists that it did not have constructive notice of any condition that could have caused Mladinov's fall, arguing that Mladinov has failed to show that any dangerous condition on the stairs (assuming one existed at all) had existed for an extended period of time. Specifically, it argues that Mladinov presents no evidence—from a video, or testimony from guests or hotel staff—that any dangerous condition existed on the stairs for any period of time prior to her fall. Mot. Summ. J. at 7–8

(citing DSOF 22–23). La Quinta relies on *Hayes*, where the Illinois Appellate Court affirmed the trial court's directed verdict in favor of the defendant and noted in dicta that there was "no evidence at all as to how long the water had been on the floor of the restroom. Plaintiff simply testified that she slipped and fell and that after she was on the floor, she noticed she was wet. In the absence of any evidence tending to show constructive notice . . . it was proper to not submit the case to the jury and to direct a verdict for the defendant." *Hayes*, 400 N.E.2d at 546.

Mladinov counters that La Quinta should have been on notice of potential spills on the stairs because guests could take food and beverages out of the restaurant. Resp. at 14. Mladinov argues that, in areas and times of high traffic, there is an onus on the business to increase its inspection for hazards. *Id.* at 16 (citing *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 604 (7th Cir. 2001)). Burton and Bailey testified that the time at which Mladinov fell was a time of "high traffic"; Mladinov therefore reasons that this presents a factual issue to be decided by the trier of fact. *Id.* at 15–16.

But the Court agrees with La Quinta that Mladinov has failed to raise a genuine issue of material fact that the foreign substance had been on the stairs a sufficient period of time prior to her fall to constitute constructive notice. Like in *Hayes*, Mladinov has presented no evidence as to how long the foreign substance had allegedly been on the stairs prior to her fall. Therefore, summary judgment for La Quinta is warranted on the issue of notice in addition to proximate cause.

**Conclusion**

For the reasons given above, La Quinta's motion to bar Steven Elisco [65] is granted and La Quinta's motion for summary judgment [54] is also granted. Civil case closed.

Dated: May 28, 2021

_____
United States District Judge
Franklin U. Valderrama